Amato v. United States

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

      At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of February, two thousand nineteen.

PRESENT:  DENNIS JACOBS,
            RICHARD J. SULLIVAN,
                     <u>Circuit Judges</u>,
            EDWARD R. KORMAN,[*]
                     <u>District Judge</u>.

- - - - - - - - - - - - - - - - -X
**BALDASSARE AMATO,**
      <u>Petitioner-Appellant</u>,

      **-v.-**                          **17-1782**

---

[*] Judge Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

**UNITED STATES OF AMERICA,**

        **Respondent-Appellee.**

- - - - - - - - - - - - - - - - -X

| | |
|---|---|
| **FOR APPELLANT:** | David I. Schoen, Montgomery, AL. |
| **FOR APPELLEE:** | Andrey Spektor, Assistant United States Attorney (Susan Corkery, Assistant United States Attorney, <u>on the brief</u>), <u>for</u> Richard P. Donoghue, United States Attorney for the Eastern District of New York, Brooklyn, NY. |

        Appeal from a judgment of the United States District Court for the Eastern District of New York (Garaufis, <u>J.</u>).

        **UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

        Petitioner-Appellant Baldassare Amato appeals from the judgment of the United States District Court for the Eastern District of New York (Garaufis, <u>J.</u>) dismissing his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 (the "petition"). Amato contends that his trial counsel was conflicted and ineffective, and that the district court abused its discretion in failing to conduct a hearing. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review. For the reasons explained below, we now affirm.

        In January 2004, Amato was indicted along with 27 other individuals for criminal activities of the Bonanno crime family. Amato was charged with three counts related to illegal gambling enterprises and a single count of racketeering conspiracy that was based on four predicate acts: the murder of Sebastiano

DiFalco (and conspiracy to do so), the murder of Robert Perrino (and conspiracy to do so), illegal gambling activities, and conspiracy to commit robbery.

Amato proceeded to trial in the Eastern District of New York (Garaufis, <u>J.</u>) alongside two co-defendants. He was initially represented by counsel appointed under the Criminal Justice Act, but later privately retained Diarmuid White, who represented him before and during the trial, at sentencing, and on appeal. Together with his notice of appearance, White filed a letter notifying the district court of a potential conflict of interest resulting from his previous representation of Joseph Massino, a former "boss" of the Bonanno family. White's representation of Massino lasted approximately eight months and involved providing support for Massino's primary defense counsel in preparation for Massino's trial. White assured the court that he recalled no material information, confidences, or secrets from his representation of Massino, but nevertheless stated his intention to engage co-counsel to cross-examine Massino if he were to testify against Amato at trial. White argued that there was no "serious potential conflict" requiring his disqualification, "and likely no potential conflict at all." Special Appendix ("SA") at 5. White further advised that Amato was prepared to waive any potential conflict of interest at a <u>Curcio</u> hearing.

In a second letter to the court, White stated that since Amato could not afford to retain co-counsel, White would cross-examine Massino himself if necessary, steering clear of any cross-examination based on his privileged communications with Massino. And since any potential conflict of interest remained waivable, Amato remained "prepared to make all appropriate <u>Curcio</u> waivers." SA at 7.

The court did not hold a <u>Curcio</u> hearing, and during the six-week trial, Massino was not called as a witness. All three defendants were convicted by a jury on all counts, with a specific jury finding that the government had proven Amato guilty of the predicate acts listed in the racketeering conspiracy count. Amato was sentenced principally to life imprisonment, and his conviction was affirmed by this Court on direct appeal. <u>United States v. Amato</u>, 306 F. App'x 630, 634-35 (2d Cir. 2009) (summary order).

3

The instant petition, filed in February 2011, asserts nine challenges to the conviction and requests discovery and an evidentiary hearing. On April 5, 2017, the district court denied discovery and an evidentiary hearing, and dismissed the petition in full. The court subsequently issued a certificate of appealability as to Amato's claim of ineffective assistance of counsel; accordingly, only that claim is before this Court. See Fed. R. App. P. 22(b).

On appeal, Amato argues that he was denied his Sixth Amendment right to effective assistance of counsel because White operated under an actual conflict of interest that adversely affected his performance, and otherwise failed to provide effective assistance at trial and on appeal. Amato additionally claims that the district court erred in failing to hold an evidentiary hearing on his ineffective assistance claims.

"In the § 2255 context, this Court reviews 'factual findings for clear error' and 'questions of law de novo.'" Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000) (quoting Scanio v. United States, 37 F.3d 858, 859 (2d Cir. 1994)). "The question of whether a defendant's lawyer's representation violates the Sixth Amendment right to effective assistance of counsel is a mixed question of law and fact that is reviewed de novo." Id. (quoting United States v. Blau, 159 F.3d 68, 74 (2d Cir.1998)).

1.      The Sixth Amendment right to counsel includes a right to conflict-free representation. See Wood v. Georgia, 450 U.S. 261, 271 (1981) (citing Cuyler v. Sullivan, 446 U.S. 335 (1980) and Holloway v. Arkansas, 435 U.S. 475 (1978)). Nevertheless, the burden of proof rests on Amato to show a conflict of interest by a preponderance of the evidence. Triana, 205 F.3d at 40 (citing Harned v. Henderson, 588 F.2d 12, 22 (2d Cir. 1978)).

Amato first argues that he is entitled to automatic reversal of his conviction because the district court failed to take the required measures when it had notice of White's potential conflict. Specifically, Amato argues that the district court had an obligation to inquire further into the potential conflict; ensure that Amato understood the potential risks of White's representation; and deal with the conflict by appointing independent counsel to advise Amato

4

regarding the conflict, or protect Amato by other means.

However, a "trial court's failure to inquire into a potential conflict of interest on the part of the defendant's attorney, about which the court knew or reasonably should have known, does not automatically require reversal of the conviction." United States v. Blount, 291 F.3d 201, 211 (2d Cir.2002) (citing Mickens v. Taylor, 535 U.S. 162, 172 (2002)). Instead, "[t]he constitutional question must turn on whether trial counsel had a conflict of interest that hampered the representation, not on whether the trial judge should have been more assiduous in taking prophylactic measures." Id. at 212 (quoting Mickens, 535 U.S. at 179 (Kennedy, L, concurring)). "As the Sixth Amendment guarantees the defendant the assistance of counsel, the infringement of that right must depend on a deficiency of the lawyer, not of the trial judge. There is no reason to presume this guarantee unfulfilled when the purported conflict has had no effect on the representation." Id. (quoting Mickens, 535 U.S. at 179 (Kennedy, L, concurring)). A narrow exception requiring automatic reversal exists "only where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict." Mickens, 535 U.S. at 168 (citing Holloway, 435 U.S. at 488).

White certainly did not object to the representation. To the contrary, he affirmatively argued that any potential conflict was waivable, and repeatedly affirmed Amato's willingness to waive. Moreover, White did not represent Amato and Massino concurrently; his relatively brief representation of Massino terminated more than two years before he was retained by Amato. Automatic reversal is therefore unwarranted here. Mickens, 535 U.S. at 168.

Amato nevertheless argues that the writ should be granted because White had an actual conflict of interest that adversely affected his performance as counsel. A defendant claiming ineffective assistance of counsel on the basis of an actual conflict of interest must demonstrate that the conflict "affected counsel's performance." Id. at 171. In order to demonstrate that a conflict adversely affected White's representation, Amato must show that at least some plausible defense strategy was forgone as a consequence of White's conflict of interest. United States v. Schwarz, 283 F.3d 76, 92 (2d Cir. 2002). And the

5

plausibility of an alternative strategy must rise above mere speculation.  See Eisemann v. Herbert, 401 F.3d 102, 108 (2d Cir. 2005).

According to Amato, the main government witness against him was Sal Vitale, an underboss of the Bonanno family, who testified about statements about Amato made to Vitale by Massino--Amato's co-conspirator.   Amato argues that White's dual loyalties to Massino and Amato created the actual conflict, and that the conflict prevented him from adequately challenging that testimony by, inter alia, using allegedly exculpatory evidence, calling Massino as a defense witness, and otherwise employing defense strategies that could conflict with Massino's interests.

Although there is a "high probability of prejudice arising from multiple concurrent representation[,] . . . [n]ot all attorney conflicts present comparable difficulties"; therefore, "the Federal Rules of Criminal Procedure treat concurrent representation and prior representation differently."   Mickens, 535 U.S. at 175. It is unclear under governing caselaw whether an actual conflict existed here based on successive representation, particularly given White's disclaimer of memory of confidential information from his representation of Massino.

In any event, Amato has failed to show that White's alleged conflict caused him to forgo a plausible defense strategy.   On the contrary, White vigorously cross-examined Vitale at trial, including by impeaching his testimony against Amato with testimony he gave in Massino's trial.   White went on to emphasize the inconsistencies in Vitale's testimony during summation.

As to White's decision to forgo calling Massino as a witness, it is "speculation to suggest that his testimony would have been exculpatory."   See Eisemann, 401 F.3d at 108.   Indeed, given that Massino, the former boss of the Bonanno family, had become a government cooperator by the time of Amato's trial, his testimony was much more likely to be damaging to Amato.   And while Amato makes much of Massino's notations on FBI 302 reports ("302s")--which included handwritten notes that Vitale's statements were "all lies" and that Massino knew "nothing about [Amato's crimes]"--there is absolutely no evidence in the record to suggest that Massino--who by the time of Amato's trial had

6

become a cooperating witness--would testify in conformity with those pre-cooperation notes.   Nor did White shy away from eliciting testimony at trial regarding Massino's crimes and general untrustworthiness.

While the district court assumed, without deciding, that Amato alleged plausible, alternative strategies, we see nothing in the record to suggest that such plausible alternative options existed.   See Eisemann, 401 F.3d at 110 (dismissing 28 U.S.C. § 2254 petition where there was "nothing in the record to suggest that [counsel's] conflict caused him to forgo a plausible defense theory").

**2.**      Amato argues that White provided ineffective assistance of counsel for additional reasons that are unrelated to the alleged conflict of interest. When "assessing a claim that a lawyer's representation did not meet the constitutional minimum, we indulge a strong presumption that counsel's conduct fell within the wide range of professional assistance."   Lynch v. Dolce, 789 F.3d 303, 311 (2d Cir. 2015) (internal quotation marks and alterations omitted).   This strong presumption may be overcome only by establishing that: (1) "counsel's representation fell below an objective standard of reasonableness"; and (2) "any deficiencies in counsel's performance [were] prejudicial to the defense."   Strickland v. Washington, 466 U.S. 668, 688, 692 (1984).

To demonstrate White's allegedly ineffective assistance, Amato points to the precluded testimony of three witnesses who Amato contends would have testified about prior statements by Vitale that were inconsistent with his trial testimony.   While the district court precluded this testimony because White failed to lay a proper foundation on cross-examination for Vitale's alleged prior inconsistent statements, the district court acknowledged that White reasonably expected the government to call these three witnesses in its case-in-chief.   Given this "good-faith" expectation, White's failure to lay a proper foundation for Vitale's inconsistent statements during cross-examination did not fall below an "objective standard of reasonableness."   Strickland, 466 U.S. at 688.

Additionally, Amato argues that White improperly failed to introduce Massino's handwritten notes on the 302s to defend against the murder charges. But it was not objectively unreasonable for White not to call Massino, since

7

calling him as a witness would have subjected Amato to the reasonable likelihood that Massino--by now a cooperator--would corroborate, not contradict, Vitale's statements.   See, e.g., Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005) ("[D]eference is particularly apt where, as here, an attorney decides not to call an unfriendly witness to the stand and has precious little means of determining how the witness might testify.").

The evidence that White allegedly failed to obtain and use is described in Amato's brief in the sketchiest of detail.   In any event, the district court evaluated it when considering Amato's petition, and found that it was cumulative, immaterial, or otherwise insufficient to show that White was objectively unreasonable in failing to introduce it at trial.   We identify no error in the district court's conclusions.

Therefore, because Amato has failed to show that his counsel's representation fell below an objective standard of reasonableness, his ineffective assistance claim fails, and we need not evaluate the prejudice issue under Strickland.   466 U.S. at 697.

**3.**       Finally, Amato argues that the district court erred in denying an evidentiary hearing with regard to his ineffective assistance claims.   We review a district court's decision as to what kind of hearing, if any, is appropriate on a § 2255 motion for abuse of discretion.   Gonzalez v. United States, 722 F.3d 118, 131 (2d Cir. 2013).   "A court abuses its discretion when it takes an erroneous view of the law, makes a clearly erroneous assessment of the facts, or renders a decision that cannot be located within the range of permissible decisions."   Id.

"[W]hen the judge who tried the underlying proceedings also presides over a § 2255 motion, a full-blown evidentiary hearing may not be necessary," Raysor v. United States, 647 F.3d 491, 494 (2d Cir. 2011) (citing Puglisi v. United States, 586 F.3d 209, 214-15 (2d Cir. 2009)), and our precedent "permits a 'middle road' of deciding disputed facts on the basis of written submissions," id. (quoting Pham v. United States, 317 F.3d 178, 184 (2d Cir. 2003)).

8

The district court determined that, given the existing record and White's sworn statement to the court addressing the petition's claims, there was a sufficient basis to find that Amato failed to assert a plausible claim for ineffective assistance of counsel. In particular, White signed a sworn declaration stating that he could not recall why he decided not to call Massino, minimizing any potential benefits of holding an evidentiary hearing. The court therefore did not abuse its discretion when it concluded that Amato failed to meet the required showing for an evidentiary hearing.

We have considered Amato's remaining arguments and conclude they are without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

9